# CASES

### ARGUED AND DETERMINED

#### IN THE

## SUPERIOR COURT OF JUDICATURE.

##### FOR

## THE COUNTY OF HILLSBOROUGH, APRIL TERM,

### A. D. 1827.

---

### HILLSBOROUGH *versus* DEERING.

No person can gain a settlement in a place which is not incorporated.

A parent is not bound by law to support the illegitimate offspring of his children.

A parent is bound by the common law to support his unemancipated children as long as he has any means whatever to do it.

When a judgment of the court of common pleas is reversed for a misdirection to the jury, there must be a *venire facias de novo* and the cause may be tried at the bar of this court.

THIS was a writ of error brought to reverse a judgment of the court of common pleas in this county. It appeared by the record that Deering brought an action of assumpsit against Hillsborough for the support of Sophia Mead

and her infant daughter, paupers alleged to have their settlement in Hillsborough. At the trial in the common pleas the town of Hillsborough introduced evidence tending to prove that John Mead, the father of Sophia Mead the pauper, was the owner of a clear estate in a farm situate in Society Land and Deering, in this county, of the value of nine hundred dollars ; that he had a house in which he lived and a small barn on said farm ; that he was the owner of eight heads of cattle and six or seven sheep ; that he was of the age of fifty and as able to labor as men generally are at that age ; that he was a blacksmith by trade, having a family consisting of a wife and four children, the youngest of which was four years old and the eldest seventeen, but it did appear that he exercised his trade.

The town of Deering introduced evidence tending to prove that the farm of John Mead was poor and not very productive, and that it would not rent for more than $45 a year ; that Mead had no money and was in debt more than $100.

The court instructed the jury upon the said evidence that "the sufficient ability" which made a parent liable by law to support a child standing in need of relief, had respect exclusively to property and not to any other kind of ability, and that the law did not impose any obligation on a father to support a poor child unless the income of his property was sufficient without diminishing his capital, unless the capital were large enough to be diminished without any hazard to the future comfortable support of the father and his family, and then left it to the jury with this direction to say whether John Mead was of sufficient ability to maintain his daughter. To this direction to the jury the town of Hillsborough filed a bill of exceptions which was allowed and signed by the presiding judge of the common pleas.

The jury returned a special verdict as follows. "The jury find that John Mead, the father of Sophia Mead, had

a legal settlement in Hillsborough in 1811, that the child of Sophia Mead was illegitimate, and that the mother has the settlement of her father John Mead ; that in 1812, John Mead removed to Society Land, an unincorporated place in this county, where he has ever since resided ; and has owned real and personal estate and paid taxes upon it so as to gain a settlement there, if he can gain a settlement there so as to lose his settlement in Hillsborough ; that the father of Sophia Mead is not of sufficient ability to support her and her child ; that she stood in need of relief and was supplied by Deering as alleged in the writ and that due notice was given ; that the inhabitants of Society Land exercise the powers and privileges granted them by law and are classed for the purpose of choosing a representative to the general court.

Upon this verdict the court of common pleas rendered judgment in favor of Deering.

*E. Parker*, for the plaintiff.

*C. H. Atherton*, for the defendant.

The opinion of the court was delivered by RICHARDSON, C. J.

The child of Sophia Mead has the settlement of its mother, who retains the settlement of John Mead her father, we shall therefore proceed to consider in what place John Mead is settled.

It is found by the jury that John Mead had his legal settlement in Hillsborough in 1811 ; that settlement he still retains unless he has lost it by gaining a settlement in Society Land. And it is further found that since 1811, John Mead has gained a settlement in Society land, if by law a settlement can be gained in that place, which is unincorporated, and the question to be decided is whether a settlement can be legally gained in a place not incorporated ?

It is very evident from the statute of January 1, 1796, prescribing the ways and means by which a settlement may be gained, that to gain a settlement means to become

an inhabitant of a town or district in such a manner as to be entitled to support from such town or district when standing in need of relief. The language of that statute is " legal settlements in any town or district within this state shall be hereafter gained so as to oblige such town or district to support the person gaining the same, &c. by the ways and means following and not otherwise." We are not aware that there are in this state any places other than towns and districts in which a settlement can be gained. As the inhabitants of towns are declared by statute to be bodies corporate, and unincorporated places cannot therefore be considered as towns, it remains to consider whether unincorporated places can be considered as districts in which a settlement may be gained.

We have adopted the term *district* in this instance from the Massachusetts statute of 1793, cap. 34, many of the provisions of which were copied into our statute of January 1, 1796, and the term has there a meaning as definite as the word *town* has among us.

Their provincial act of the 1 Geo. 3, cap. 285, Col. & Prov. Laws, 641, declared that districts should "to all intents and purposes be considered as towns, the privilege and duty of sending a representative to the general assembly only excepted." Districts are also declared to be places vested with corporate powers by their statute of 1785, cap. 75, sec. 9. And in an opinion of the judges of the supreme judicial court of Massachusetts, delivered in 1807, in answer to a question proposed by the governor, they say that " the inhabitants of districts having all the powers, privileges and immunities of towns and being by law to be considered as towns to all intents and purposes except in the election of a representative, whatever privilege not within that exception is vested by the constitution in the inhabitants of towns may be enjoyed by the inhabitants of districts. 3 Mass. Rep. 572.

If then the term *district* is used in our statute of January 1, 1796, in the sense in which it is used in the statute

VOL. I.          12

of Massachusetts from which it was copied, it is very clear, that it means places incorporated, and having all the powers, privileges and immunities of towns except the right of sending a representative to the general court.

It is also very apparent from the language of the statute of January 1, 1796, that the term district is used to denote incorporated places. For it is declared that "any person who shall be admitted an inhabitant by any town or *district* at a legal meeting, &c. or shall be chosen, &c. clerk, treasurer, selectman, &c. being duly elected thereto in any town or district, shall thereby gain a settlement in said town or district." In the first part of this clause districts are mentioned as places where legal meetings may be holden and corporate acts done ; and in the latter part of the clause they are manifestly considered as places having a clerk, treasurer, selectmen and other town officers.

The statute further declares "all persons dwelling and having their homes in any unincorporated place in this state at the time when the same shall be *incorporated* into a town or *district* shall thereby gain a settlement therein."

"And when any new town or *district* shall be *incorporated*, &c. all persons settled, &c. and who shall actually dwell and have their homes within the limits of such new town or *district* at the time of *its incorporation* shall thereby gain, &c. Provided, &c. that no person residing in that part of any town or district which upon such division shall be *incorporated* into a new town or *district*, &c. shall gain, &c. Here districts are very distinctly recognized as incorporated places.

So the statute of December 25, 1816, enacts " that any person who shall be admitted an inhabitant by any town or district *at a legal meeting*, &c. or shall be chosen and actually serve one year in the office of *clerk*, *treasurer*, *selectman*, &c. being duly elected thereto in any town or

*district* shall thereby gain a settlement in said town or *district*.

The word "*district*" is used in the constitution. Thus it is declared " all persons qualified to vote in the election of senators shall be entitled to vote within *the district* where they dwell in the choice of representatives." Here "*district*" is used as synonomous with *town*. And further, " every member of the house of representatives, &c. shall have an estate within the district which he may be chosen to represent of the value of one hundred pounds, &c. Here the word *district* is used to signify a town, or, where two or more are classed for choosing a representative, the towns classed.

The inhabitants of unincorporated places are entitled to some of the privileges and subject to some of the liabilities, in certain cases, which belong to the inhabitants of towns. Thus they may be taxed, and when taxed, they are entitled to vote for senators. This privilege is secured to them by the constitution, and the provision which secures it to them is supposed to have originated in this way. The 28th article in the bill of rights declares that "no subsidy, charge, tax, impost or duty shall be established, fixed, laid or levied under any pretext whatever without the consent of the people or their representatives in the legislature or authority derived from that body." It seems to have been supposed that no tax could be laid upon the inhabitants of any place who were not in some way represented in the legislature, consistently with this clause in the bill of rights. Upon adverting to the constitution it will be found that unincorporated places can have no voice in the choice of members of the house of representatives. Towns, parishes and places entitled to town privileges are alone competent to send representatives. Each of these when having a certain number of rateable polls has a right to choose a presentative ; and such places as have less than a certain number of such polls are to be classed for

the purpose of choosing a representative.    But no provision is made for classing unincorporated places.    In order, therefore, that such places might be represented in the general court it was provided in the constitution that "the inhabitants of plantations and places unincorporated qualified as this constitution provides, who are or shall be required to assess taxes upon themselves towards the support of government, or shall be taxed therefor, shall have the same privilege of voting for senators in the plantations and places wherein they reside as the inhabitants of the respective towns and parishes aforesaid have."

This provision in the constitution seems to have been copied from the constitution of Massachusetts, where a similar provision was introduced for the same purpose. 3 Mass. Rep. 570.

And the statute of February 8, 1791, sec. 20, enacts " that all places unincorporated which shall from time to time be ordered by the general court to pay any part of the public taxes shall be &c. invested with all the powers which towns in this state by law have so far as relates to the choice of assessors, selectmen and collectors.

The statute of December 16, 1796, makes it the duty of the selectmen of unincorporated places to perambulate the lines of such places.    1 N. H. Laws 248.

But these provisions in the constitution and laws of this state give nothing more to the inhabitants of unincorporated places than a right to vote in the choice of senators and to choose selectmen, assessors and collectors.    They have no authority to raise one dollar by a tax upon themselves for any purpose whatever.    They cannot vote to raise money to make highways, and provision is made by law that when highways are laid out through such places the costs shall be paid by the county.    1 N. H. Laws 386. Nor can they vote to raise money to repair highways, and it is provided by law that roads through such places shall be kept in repair by a tax upon the land laid by the court of common pleas.

It is very clear, that unincorporated places have no <span>Hillsboro'<br>v.<br>Deering.</span> authority to raise money for the support of paupers. Nor can any action be maintained by or against them. It would therefore be idle to permit a person to gain a settlement in a place which has in law no ability to provide for his support when standing in need of relief.

The statute of June 27, 1817, provides that if any town becomes unorganized so as to be without town officers legally chosen all paupers for whose maintenance such town was, while organized, liable shall so long as such town remain unorganized be supported at the expense of the county. 2 N. H. Laws 30. This provision was introduced because an unorganized place has no ability to raise money, or to sue or be sued; because it is in fact as an unincorporated place.

We are therefore of opinion that no settlement can be gained in an unincorporated place, and that upon the facts stated in the verdict of the jury the town of Deering was entitled to judgment. There is therefore no error in the proceedings of the court below in this respect.

There is a defect in the verdict in this case. It appears that the court left it to the jury to say whether John Mead was of sufficient ability to support his daughter. But the jury instead of finding that matter in pursuance of the direction of the court have found that he was not of sufficient ability to maintain *the daughter and her child.* It is very obvious that there is a material difference between the matter left to the jury and the matter found by them. For John Mead is clearly not bound by law to support the illegitimate child of his daughter, that child not being his grandchild within the meaning of the statute. Comyn's Dig. "Justices of the peace." B 68. 1 Ventris 310. 4 D. & E. 118, *Tubb* v. *Harrison.* 2 Lord Raymond 1454. 1 Strange 190, *Rex* v. *Munday.*

But without stopping to enquire whether the judgment is erroneous by reason of this defect we shall proceed to

examine the objections which are raised to the direction of the court to the jury.

It is urged in this case that the jury were misdirected in a matter of law and that the judgment ought to be reversed on this ground. It appears from the bill of exceptions that in relation to the question whether John Mead was of sufficient ability to maintain his daughter the court directed the jury in substance that he was not by law to be considered of sufficient ability unless he had sufficient property to do it without any hazard to the future comfortable support of himself and family.

In the case of *Newport* v. *Amos Eastman*, Cheshire, October term, 1824, which was assumpsit for the support of Eastman's mother who was a pauper, it appeared that Eastman was the owner of real estate to the value of $2000, but was in debt to the amount of $1400, and of very infirm health—this court instructed the jury that if they were satisfied that Eastman could not from the produce of his farm with his own labor and the assistance of his family maintain himself, his wife, children and mother and pay the interest of his debts annually, he was not to be considered as of sufficient ability within the meaning of the statute and was entitled to a verdict. The jury found for the defendant, and no exception was taken to the direction which had been given to them.

In the case of *Dover* v. *McMurphy*, Strafford, September term, 1826, which was assumpsit for the support of the defendant's father, it was shewn that the defendant had real estate to the value of $1800 and personal estate to the amount of $500 ; that his debts amounted to $700 and that his health was feeble. The court gave to the jury the same direction as had been given in the case of *Newport* v. *Eastman* and the jury returned a verdict in favor of the defendant. The council of the plaintiff however excepted to the direction given to the jury and the verdict was taken subject to the opinion of the court upon that point, which has not yet been decided. The direction

to the jury in those cases was given under an impression that it could not have been the intention of the legislature to throw upon individuals of moderate circumstances the burthen of supporting their poor relations in cases where that burthen would manifestly be not unlikely to reduce those upon whom it was thrown to poverty and want. It seemed to us that sound policy required such a construction to be given to the statute as to prevent it from augmenting the number of the poor and indigent ; and that its real object was to impose this burthen only in cases where the kindred had sufficient property to enable them to afford the relief without any considerable hazard of thereby materially altering their own circumstances.

But it is unnecessary to settle at this time the question whether the directions given in those cases were correct or not, because in this case, although the same directions in substance were given, they were given under circumstances materially different. Here the question was not whether a child was bound by law to support a parent, but whether a parent was bound to support a child and that child for aught that appears unemancipated, and under the age of twenty one years. It is very clear that the claim of unemancipated children to support from their parents stands on very different ground from the claim of any other description of persons to support from their kindred. By the common law and independent of the statute such children are entitled, and have a perfect right to support from their parents. And correlation to this duty of maintaining their offspring is the right of parents to the services and earnings of their children so long as the latter remain under their control. This is the rule of the common law. 4 Mass. Rep. 97, *Dawes* v. *Howard*, and 675, *Freto* v. *Lefavour* ; 2 ditto 113, *Benson* v. *Remington* ; 3 Espin. N. P. C. 1, *Stone* v. *Carr* ; 2 Mass. Rep. 415, *Whipple* v. *Dow* ; 7 ditto 145, *Day* v. *Everett* ; 16 ditto 28, *Angel* v. *McLellan* ; 16 Johns. 285.

And if a father neglect to provide for his infant children a third person may provide for them at the expense of the father.    13 Johns. 480, *Van Valkinburgh* v. *Watson*. 2 W. Bl. 1325, *Bainbridge* v. *Pickering*.

The liability of a parent to provide for such children not being created by any statute, does not depend upon the amount of his property.   As on the one hand he is entitled to their services and earnings until they arrive at the age of twenty one years, so on the other hand he is by the common law bound to support them so long as he has any means whatever.   They are a part of his family and stand on the same ground as his wife.   14 Mass. Rep. 227, *Hanover* v. *Turner*.

A man's wife and his infant children cannot become a charge upon a town as paupers until he is a pauper. Sound policy requires that it should be so.   For if the rule of law given to the jury in this case were applicable to unemancipated children, every man in moderate circumstances might throw his young children upon the town for support until they became able to support themselves.

We are therefore of opinion that under the circumstances so far as they are disclosed in the bill of exceptions the direction was too broad and without proper limitations.   The jury should have been told that the law, as stated by the court, was not applicable, unless the pauper was emancipated, and that if they found that she was not emancipated, and that John Mead, her father had any means whatever of supporting her, the town of Hillsborough was entitled to a verdict.

And for this error in the proceedings in the court below the judgment must be reversed.   But as we are bound by law to render such a judgment as the court below ought to have rendered and as the facts necessary to enable us to render a proper judgment have not been found, there must be a *venire facias de novo* and the cause be tried at the bar of this court.   1 Gallison 87,

*The United States* v. *Sawyer* ; 3 Johns. 443, *Brown* v. *Clark* ; 5 Mass. Rep. 391, *Keyes* v. *Stone* ; Doug. 731, *Grant* v. *Astle* ; 2 D. & E. 125.