## JENNESS *vs.* EMERSON, Adm'r.

The general rule is, that a parent is entitled to the earnings of his minor child. But this right arises out of the duty to support and maintain such child; and when the duty to support the child no longer remains, the right to his earnings ceases also.

An insane mother, who is herself a pauper, is under no obligation to support a minor child, nor entitled to his earnings.

A minor child does not necessarily become a pauper by reason of the mere pauperism of the parent.

When a parent is a pauper, and is maintained by a town, such town is not entitled to the earnings of the minor child of such pauper who is not himself a pauper.

The mother of a minor child was insane, and poor, and unable to maintain herself, and was supported by the town of M. for about two years. During a portion of that time the minor labored for one L., in whose employment he earned more than was sufficient for his support, and he was then taken by a person acting as the overseer of the poor of M. into his service, where he labored, and his labor, as found by the jury, exceeded in value his board, clothing and schooling, and other necessaries furnished him; and at no time did he apply for aid from the town. It was *held* that he was not a pauper, and could not be treated as a pauper; that neither the town of M. nor his mother was entitled to his earnings; but that he was well entitled to recover of said overseer the amount of the excess of the value of his services over the board, clothing, schooling and other necessaries furnished him.

ASSUMPSIT, for work and labor from April, 1832, to April, 1835, performed by the plaintiff for Moulton, the intestate. At the trial, which was had upon the general issue, the plaintiff introduced evidence tending to show that he labored for the defendant's intestate on his farm for the period mentioned in the writ, the plaintiff being at the commencement of said period between fifteen and sixteen years of age; that about that time, his mother, who was his only surviving parent, became deranged, and that she had a small amount of property, which was taken possession of by the defendant's intestate, claiming to be sole overseer of the poor of Moultonborough.

The defendant offered evidence tending to show that the defendant's intestate during said period acted as sole overseer of the poor of Moultonborough; that a short time prior to April, 1832, he relieved the mother of said plaintiff as a pauper, and

continued to provide, at the expense of said town, for her support for about two years and a half, when she recovered from her derangement; that about the same time he also took into his house and supported for about a year and a half a sister of said plaintiff, who was several years younger than he was, and unable to support herself; that the plaintiff had no property, and was rather feeble in person, and of rather small mental capacity. The plaintiff, on the other hand, offered evidence tending to show that he was able to earn more than his subsistence, and that he had been at work for a year with a Mr. Lee at the time when the defendant carried him to his house, and that his mother was to receive from said Lee some compensation for his labor, and the plaintiff contended that said Lee was willing to have kept him longer in his service. The defendant offered in evidence the following paragraph from the deposition of Simon Moulton, (the remainder of which was in evidence,) viz.: "I understood the reason said Moulton took Albert Jenness away from said Lee's was, that said Lee would not keep him summer and winter. I understood this at that time from said Moulton." But this evidence was rejected by the court as incompetent.

The defendant requested the court to charge the jury that the mother of the plaintiff, there being no evidence that she had given up her right to his earnings, would be entitled to them, and that the present action could not therefore be maintained by the plaintiff; and farther, that the defendant's authority, as overseer of the poor, was sufficiently proved by the parol evidence of his acting in that capacity, if believed by the jury; and that if he acted in that office, and if the plaintiff was in such a situation as made it the defendant's duty, as overseer, to set him to work, the present action could not be maintained. But the court ruled, for the purposes of the trial, that the suit might be sustained in the plaintiff's name; and that the defendant, as the suit was brought directly against him, could prove that he was overseer of the poor only by the record evidence of his appointment, and that the evidence offered that he acted merely as overseer, was insufficient for that purpose. The deposition of the mother of the plaintiff was introduced to aid in sustaining the plaintiff's claim, and the

court instructed the jury that if the mother was aiding and assisting in the maintenance of this suit, it would be equivalent to a relinquishment of any claim on her part; and that if she was made a witness in the case, it would be her duty to assert her claim to the wages, if she intended to make such claim, and that if she stood by and permitted the suit to go on in her son's name, and asserted no right to the wages, it would be considered as a relinquishment of her claim to the son. The case was submitted to the jury solely on the question, whether the plaintiff's labor was worth more than he had already received for it from the defendant in board, clothing, schooling and other necessaries furnished him. A verdict was returned by them in favor of the plaintiff, for the sum of $37.18, and the defendant moved to set the same aside for misdirection of the court in the matters aforesaid; and the questions arising upon the foregoing report of the trial were transferred to this court for decision.

*Hale & Woodman*, for the plaintiff.

*S. Emerson & James Bell*, for the defendant.

WOODS, J. The main question arising upon this case is, whether the plaintiff is entitled to the results of his own labor, performed for the defendant's intestate under the circumstances detailed in the case, or whether the same belong to his mother. During the period of the services for which the claim of compensation is made, the mother of the plaintiff was his only surviving parent, and she was insane, and a pauper, supported at the expense of the town of Moultonborough, and the plaintiff was a minor, poor, and destitute of the means of support, excepting as the same might be derived from his own labor.

The proper decision of this question depends upon the principles of the common law regulating the duties, rights and liabilities of parents and children.

It may be safely stated, as a general rule, that parents are under obligation to support their minor children, and in some degree liable for their education, and entitled to their earnings.

*Benson* vs. *Remington*, 2 *Mass. R.* 113; *Nightingale* vs. *Withington*, 15 *Mass. R.* 272; *Jenney* vs. *Alden*, 12 *do.* 375; *Burlingame* vs. *Burlingame*, 7 *Cowen R.* 92.

But their duties and rights are limited, and are dependent upon, and in a great measure result from each other. Whether the general rule will apply to the mother, in all cases where the father has deceased, we need not settle in this case.

*Blackstone* says, the father has " the benefit of his children's labor while they live with him and are maintained by him." 1 *Black. Com.* 453.

Mr. Chancellor *Kent*, in his Commentaries, (2 *Kent's Com.* 193,) says, that "in consequence of the obligation of the father to provide for the maintenance, and, in some qualified degree, for the education of his infant children, he is entitled to the custody of their persons, and the value of their labor and services." The case of *Day* vs. *Everett*, 7 *Mass. R.* 145, holds the same principle. Mr. Justice *Woodbury*, in *Gale* vs. *Parrot*, 1 *N. H. Rep.* 28, says, " the general right of the parent to recover for such services cannot be contested." But in that case it is remarked, that " when a minor happens to be eloigned from the parent, the latter often ceases to be entitled to any portion of his wages, on the ground that the child without them would be suffered to starve."

In *Nightingale* vs. *Withington*, 15 *Mass. R.* 272, it is said, that " the father, and in case of his death the mother, is entitled to the earnings of their minor children." The right must be founded upon the obligation of the parents to sustain and support their children, which obligation is compensated by a right to their services, or to the fruits of them, if by their permission they are employed by other persons.

But when the father has discharged himself of the obligation to support the child, or has obliged the child to support himself, there is no principle but that of slavery which continues his right to receive the earnings of his child's labor. Thus, if the father should refuse to support a son, should deny him a home, and force him to labor abroad for his own living, or should give or sell him his time, as is sometimes done, the law will imply

an emancipation of the son, and will give him the benefits of such contracts as are made with him for his services.

In *Dedham* vs. *Natick*, 16 *Mass. R.* 135, Mr. Justice *Wilde*, in delivering the judgment of the court, remarks, that " the mother, after the death of the father, remains the head of the family. She has the like control over the minor children as he had when living. She is bound to support them, if of sufficient ability, and they cannot, by law, be separated from her."

A similar principle is laid down in the case of the *Trustees of Bloomfield* vs. *Trustees of Chagrin*, 5 *Ohio Cond. R.* 193. And in *Hillsborough* vs. *Deering*, 4 *N. H. Rep.* 95, the court, speaking of unemancipated minor children, say, " By the common law, and independent of the statute, such children are entitled, and have a perfect right to support from their parents, and correlative to this duty of maintaining their offspring is the right of parents to the services and earnings of their children, so long as the latter remain under their control."

The plaintiff in this case was clearly in no sense under the control of his mother at the time of his employment with the defendant. He may well be considered as emancipated at that time from the control of his parents by misfortune, which may be as effectual for that purpose as the voluntary emancipation of them by their parents. *Lubec* vs. *Eastport*, 3 *Greenl. R.* 220 ; *Sydney* vs. *Winthrop*, 5 *Greenl. R.* 123. In *Riley* vs. *Jameson*, 3 *N. H. Rep.* 29, Ch. J. *Richardson* says, " a mother stands on different ground from the father in respect to her children. She is bound to support her children only when she is of sufficient ability, and they stand in need of relief. While a mother actually supports her minor children at her own expense, she is entitled to their services, and they may perhaps be presumed to be in her employment. But in the present case it did not appear that the mother maintained the defendant at her own expense. He may have had property sufficient to maintain him ; and she may not have been of sufficient ability. There is no ground, then, to presume, from the circumstance that the defendant lived with his mother, that he took possession of the *locus in quo* in her right."

Upon the authorities cited, it would seem to be well settled

that parents are not entitled to the earnings of their emancipated children; that they may be emancipated by misfortune, as well as by the assent of their parents. And it would seem to be as well settled, that it is only when parents are bound to maintain their children, or actually do maintain them, that they are entitled to their earnings. And no case is found, and it is believed none can be found, giving any countenance to the doctrine, that an insane mother, who has neither the ability to support herself nor her children, but who is a pauper, is under any obligation for the support and maintenance of her minor children, or in any manner entitled to their earnings. It seems entirely clear, upon the principles maintained in all the authorities, that the mother has no right or claim to the services of a minor child, in a case where she is not bound and liable for its support. When no such duty exists, no such right exists. The right to the services arises directly out of the duty and liability for support. And we are all of the opinion that the instructions of the court in this particular were correct.

But it is farther contended in this case, that if the mother be not entitled to recover the earnings of the plaintiff, yet the town of Moultonborough is entitled thereto, inasmuch as the mother was a pauper; upon the ground that our statutes make provision to the effect, that, if parents are paupers, the minor children of such parents are also paupers, and the earnings of the whole go to the town. It cannot be denied, that, if the premises assumed were correct, that the minor children of pauper parents are paupers, the consequences would also follow which are contended for.

But that position cannot be maintained; it was never in the contemplation of the Legislature that the mere fact of the pauperism of a parent should necessarily make the minor children paupers also. Nor was it the intention of the Legislature that the earnings of minor children, not paupers, should go to aid in the support of parents that are paupers. The result of any such construction of the statutes as that contended for, would inevitably lead to the pauperism of the children.

Without other means, if the law diverts their earnings from their support to that of their pauper parents, then indeed the pau-

perism of the children is the neccesary consequence. But the statute is not so in terms, nor, in our opinion, in fair and legal construction of its terms, nor in its spirit, nor in the intention of those who enacted it. 1 *N. H. Laws*, *304*, *sec.* 7.

There is no fair pretence that the plaintiff was a pauper, unless such a consequence could follow from the mere pauperism of the mother. He never applied for aid from the town. He was at the time when the defendant's intestate took him into his employment, earning wages beyond his mere support and continued to earn more than was sufficient for his clothing, support, and education, while in the employment of the defendant's intestate, as found by the verdict. He was not then a pauper in fact or law. The town are not entitled to the earnings of the plaintiff. It is therefore of no consequence whether the evidence offered by the defendant of his intestate's acting as overseer of the poor was competent to prove his official character as such overseer of the poor or not. It does not appear that he acted or intended to act in the employment of the plaintiff in his official character. Could he act in the double capacity of agent to let to hire, and of employer ? Besides, as before suggested, he could not treat the plaintiff as a pauper, until he became a pauper in need of relief.

The evidence of the declaration of the defendant's intestate, contained in Moulton's deposition, was properly rejected by the court. It was the declaration of the defendant's intestate of what a third person had declared. It was not a part of the *res gestœ*. It was at most mere hearsay evidence as related by a party. Besides, Lee is a witness, and, if the evidence were material, could testify to the reason why the defendant's intestate took the plaintiff from his employment.

Upon these views of the case, the other rulings not referred to in the opinion are immaterial.

On the whole, we are clearly of the opinion that the action is well maintained, and that there must be

*Judgment on the verdict.*