# REPORTS.

## COOS,

### DECEMBER TERM, A. D. 1854.

---

### COLEBROOK *v.* STEWARTSTOWN.

30   9
69   401

A person is bound generally to support his poor relatives only when he can support himself, and his family and the paupers, from his annual income.

The question of ability is to be decided, in each case, upon the state of things then existing.

If it becomes a question whether a man's property shall descend to his heirs, upon his decease, or shall be applied, in his life, to the relief of poor relations, he is not generally bound to expend his capital for their support.

A man is not required, at any age, to expend for the support of poor relations any more than the surplus of his annual income, beyond what is needed for the maintenance of himself and his immediate family.

ASSUMPSIT, for supplies furnished to the family of Joseph Chase, consisting of his wife, Emily Chase, and three minor children. The supplies consisted principally of wood, furnished in the winter, spring and fall of 1851, amounting, in the whole, to $9,04. The defence set up was, that David Moses, the father of Emily Chase, is liable for their support. It appeared that when the relief was afforded, Joseph

Chase was imprisoned in jail, to await his trial upon a charge of a crime, for which he was afterwards sentenced to the State Prison. Mrs. Chase had five children living with her, varying from two to eleven years of age. She was in destitute circumstances, but was strong and healthy; and when she applied for aid, she said she could get along, if the town would supply her with fuel; and after this suit was brought, she put out her children in good places; and when her deposition was taken, she said they were then no expense to her, and she did not expect they would be. The suit was commenced January 5th, 1852.

In 1851, David Moses was the owner of a farm in Stewartstown, which the plaintiff's counsel estimated at $1,400, and the defendant's counsel at $2,000. He had between $1,500 and $1,600, besides some interest due him from responsible persons, and was wholly free from debt. In the spring of that year, he conveyed the farm to a young man, who had about $300 in personal property, and took back a mortgage for the support and maintenance of himself and his wife during their lives. This agreement was cancelled, and the farm re-conveyed in 1852, but for what cause did not appear. David Moses, in 1851, was an industrious farmer, sixty-seven years of age, was in good health, and as able to labor as men in general of that age. His wife was a year or two younger, was in good health and industrious, but her wrists had been lamed in some way, so as to cause her some inconvenience. They had three children, Emily Chase and two sons, both of whom were in good circumstances, and in no way dependent upon their father for support.

The court instructed the jury as follows: " By the humane provisions of our law, relief is to be afforded to poor persons, in any town where it is needed, without regard to the ultimate liability of any other town or person. When any sum has been thus expended by a town not chargeable for the support, the question arises who shall refund. The answer is, the relatives in the line of father or grandfather,

Colebrook *v.* Stewartstown.

mother or grandmother, children or grandchildren, if of sufficient ability; otherwise the town wherein such poor person has a legal settlement. In this case, the legal settlement was in Stewartstown, but the defendant contends that David Moses, the father of Mrs. Chase, and grandfather of her children, was of sufficient ability within the meaning of the law. The question is, principally, one for the jury, though the court will give some instructions upon the subject. What shall be deemed sufficient ability must, to a certain extent, be determined according to the circumstances of each case, as it is presented. You will notice that the same were not given in all of the cases, to which counsel have called your attention, though the same general principle runs through them all, that the burden of supporting poor relations is not to be imposed, when it would be not unlikely to reduce those upon whom it is thrown to poverty and want. The court do not say to you that in no case is the relation liable, unless he can support himself and family and the paupers from his annual income, for a man may have reached that time of life, and be in such circumstances, that it might not be unreasonable to require him, if necessary, to trench upon his capital. The court do not say that this is such a case, but the subject is left for your decision, under the rule which will be stated. Nor does the court instruct you, that you must be able to see that David Moses would be able to relieve the family of Joseph Chase indefinitely, whatever their necessities might become, for their wants may be greater, and his own ability may be less. He may be able to refund what has already been expended, and yet become unable to support the family hereafter, or if unable to meet the past expenses, he may become able to supply their future wants. Each case must be decided according to the circumstances of the parties at the time. The rule which we give you is this: Could he, so long as the wants of his daughter and her children should be no greater, and his own ability no less, afford the assistance

which their situation called for, without any hazard to the future comfortable support of himself and his wife, or not? If to give such assistance, so long as their circumstances and his should remain substantially the same, would endanger his own support, he was not bound to render it; not if the danger would be such as a reasonable man ought to fear and guard against; but, on the other hand, if the question was whether, in all probability, a considerable portion of his property should go to his heirs, after the decease of himself and his wife, or a part of it be applied in his lifetime, for the benefit of this family in their need, he was bound thus to apply it."

The jury returned a verdict for the defendant, which the plaintiff moved to set aside, because of misdirection.

*Burt* and *Benton,* for the plaintiff.

*Flint* and *Burns & Fletcher,* for the defendant.

BELL, J. This case raises the inquiry whether the rule, heretofore laid down by this court, in relation to the liability of persons in moderate circumstances, for the support of their poor relations, standing in need of support, requires to be modified.

In *Dover* v. *Murphy,* 4 N. H. Rep. 158, the court, upon consideration, sustained the charge of the court to the jury, " that unless they were satisfied that the income of the defendant's property, with his own labor, was sufficient for the comfortable support of himself and his family, to pay the interest of the money he owed beyond what was due to him, and maintain the pauper, he had not that sufficient ability which the statute intended, and was not liable; that a person thus owning a farm, and not having more income than what was necessary for the maintenance of himself and family, is not bound to dispose of any part of his real or personal estate for the support of his poor relations. The

question was not whether the defendant could pay the sum demanded, or support the pauper any particular portion of time, without immediate injury to himself and family, but whether his income was such as to enable him to furnish such support, at any and all times, when the necessities of the pauper required it, without embarrassing him, or affecting the comfortable subsistence of his family." And see *Hillsborough* v. *Deering*, 4 N. H. Rep. 94, and *Newport* v. *Eastman*, there cited.

The charge to the jury, in the present case, presents a somewhat different view of what is to be regarded as sufficient ability, within the meaning of the law.

After stating that the same general principle runs through all the cases, that the burthen of supporting poor relations is not to be imposed when it would be not unlikely to reduce those upon whom it is thrown, to poverty and want, it is added : " The court do not say to you that, in no case, is the relation reliable, unless he can support himself and family and the paupers from his annual income, *for a man may have reached that time of life, and be in such circumstances, that it might not be unreasonable to require him, if necessary, to trench upon his capital.* * * * * If, to give such assistance, so long as their circumstances and his should remain substantially the same, would endanger their own support, he was not bound to render it, not if the danger be such as a reasonable man ought to fear and guard against ; *but if, on the other hand, the question was whether, in all probability, a considerable portion of his property should go to his heirs, after the decease of himself and his wife, or a part of it be applied, in his lifetime, for the benefit of this family, in their need, he was thus bound to apply it.*"

The rule is well laid down by the learned judge in the court below, that the jury need not be satisfied of the ability of the relative proposed to be charged, to maintain the poor relation under all the contingencies which may happen, because the ability of the relative may become less, or the

wants of the pauper may become greater. The question is to be decided with reference to the existing state of things. The ability of the relative is to be considered with reference to the present state of his property and his present indebtedness, his present income and his present reasonable expenses, the present number and condition of his family, and their health and ability to labor. The condition of the person requiring relief is to be judged of in the same way, by his age, state of health, ability to labor, or if there is a family, by their ages, health, &c., as they now are, having reasonable reference, in all these cases, to the nature of the disabilities which deprive them of the power of maintaining themselves. If, then, in the present state of his family and means, and in the present state of destitution of his relatives, and their inability to support themselves, he cannot afford the assistance their situation calls for, without reducing his property below the amount required, with his labor, to afford a comfortable support to his family, and thus hazarding their comfortable support in future, he is not to be deemed *a person of sufficient ability,* within the meaning of the statute. This is believed to be a correct statement of the principle, as laid down and acted upon by our courts for many years, and it approves itself to our judgment as a sound and reasonable rule.

But the charge, in this case, lays down a further principle, namely, that where a man has arrived at a certain time of life, so that the question may fairly be considered to be whether a considerable portion of his estate shall go to his heirs, after his death and that of his wife, or a part of it shall be applied, in his lifetime, to the benefit of his destitute relations, in their need, he shall be held chargeable, though at the expense of his capital.

This view was taken, in argument, by very distinguished counsel, in *Dover* v. *McMurphy,* 4 N. H. Rep. 158, and considered by the court, and deliberately overruled. " We cannot accede," say the court, " to the rule proposed by the

plaintiffs' counsel, to subject to this liability all a man's estate, except what may be sufficient for his support during life, because that would be still more severe than the rule laid down in this case, and would, in our opinion, tend to increase the burdens thrown upon towns rather than relieve them, and because it would be impracticable to apply such a rule with any certainty. There are no data by which it can be estimated how much a man may want to support himself and those who depend upon him through life. It must be all vague and uncertain conjecture." These views seem to us to be sound and reasonable. The ordinary rule of the court seems to us to border on harshness and severity. It tends to destroy one of the most powerful inducements to industry, prudence and economy in those who have the misfortune to have needy relations, the hope of improving their condition, and of leaving their children to commence life under better advantages ; because it devotes all a man's net earnings, beyond a limited amount, to the support of his needy and, perhaps, undeserving relations. It is hard enough to say to a man, as the law, in effect, now says, " All you have earned and laid aside, in the hope of fitting out your daughters respectably on their marriage, or of aiding your sons to buy their farms, or to procure the means of commencing business in their trades, must be devoted to maintain your relations;" especially where, as is too often the case, the misconduct of those relations has been a great obstacle to a man's own success in life, without adding that even the property which has been earned and saved to secure himself from the almshouse, must all be applied to the same purpose, so soon as, from the approach of age, it becomes more and more certain that it will not be required for his own support; so that when he dies he will have nothing to leave to his heirs, or to reward the kindness of those who have cared for him in his declining years.

Such a result seems to us so unjust and cruel, that it could not have been intended by any legislative body. And

so far from a more severe rule being adopted than that heretofore practised upon, we have the impression that when poverty and suffering become more common among those who shall come after us, as must unavoidably happen from a more crowded population, a more liberal rule may, perhaps, be adopted. And it seems to us that it will not be unreasonable to hold that the earnings of the man of labor, by means of the capital of others, in ordinary cases, are not to be taken from him for the support of poor relatives, until he has had opportunity to accumulate sufficient capital to give employment to his own industry. And that the accumulations designed to establish a man's family in life, in a style suitable to enable them to acquire a decent and comfortable living, by the aid of their personal industry, are sacredly due to them, and ought not to be taken from him or from them by claims of an inferior character. However these impressions may be regarded, we are satisfied that the charge of the court below is not in conformity to the law, and there must, therefore, be

*A new trial.*